UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| Fernando Magana-Mendoza | ) | Docket No.    1:18CR02056-SMJ-1 |
| | ) | |
| | ) | |

**Prepared for:** The Honorable Salvador Mendoza, Jr.
U.S. District Judge

**Prepared by:** Erica Helms
U.S. Probation Officer
509-574-5523
Erica_Helms@waep.uscourts.gov

**Assistant U.S. Attorney**               **Defense Counsel**
Benjamin David Seal                       Jeffrey Dahlberg
402 East Yakima Avenue, Suite 210         306 East Chestnut Avenue
Yakima, WA 98901                          Yakima, WA 98901
509-454-4425                              509-248-8920

**Sentence Date/Location:** December 11, 2018, at 11:00 AM in Yakima, Washington.

**Indictment:**    **Count 1**:
Alien in the United States After Deportation
8 U.S.C. § 1326(a)(1) and (2)
Not more than 2 years imprisonment/$250,000 fine
(Class E Felony)

**Release Status:** The defendant has been in federal custody since November 7, 2018.

**Detainers:** U.S. Immigration and Customs Enforcement
York County Sheriff's Office in South Carolina, J153013

**Codefendants:** None

**Related Cases:** None

**Date Report Prepared:** December 3, 2018                    **Date Report Revised:**

1

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

**Identifying Data:**



| | |
|---|---|
| **Date of Birth:** | March 31, 1972 |
| **Age:** | 46 |
| **Race:** | White / Hispanic origin |
| **Sex:** | Male |
| **Height (inches)/Weight (lbs.):** | 68 / 180 |
| **Hair/Eye Color:** | Black / Brown |

| | |
|---|---|
| **SSN:** | Not applicable |
| **FBI:** | 795381LB2 |
| **USM:** | 11547-379 |
| **State ID:** | WA24850634 |
| **ICE:** | A078035449 |
| **PACTS:** | 5354203 |
| **Education:** | Third grade in Mexico |
| **Dependents:** | Four |
| **Citizenship:** | Citizen of Another Country |
| **Immigration Status:** | Illegal Alien |
| **Place of Birth/Country:** | Tecapatepe, Michoacán, Mexico / Mexico |

**Last Known Address:**   10132 Road P.5 Southeast, number 3,
Warden, WA  98857

**Alias(es):**   Maganamendosa, Fernando; Sandoval, Fausto Sanchez; Sanchez-Sandoval, Fausto; Magana-Mendoza, Filberto; Magana-Mandoza, Fernando; Magana Mendoza, Fernando; Maganamendoza, Fernando; Mendoza, Filiberto Magana; Magana-Mendoza, Filiberto

**Alternate IDs:**   Alias DOB: 08/02/1972; 04/02/1971; 03/02/1973; 08/02/1973; 10/25/1976; 01/01/1920
Alias ICE #: A091403248; A076649789
Alternate State ID Number: SC01825847

*Restrictions on Use and Redisclosure of Presentence Investigation Report. Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and  federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.*

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

**PART A. THE OFFENSE**

**The Offense Conduct**

1. On August 28, 2018, the defendant was located at the Yakima County Jail in Yakima, Washington, within the Eastern District of Washington where he was in custody for drug related charges through Yakima County Superior Court, cause number 18-1-01634-2. An investigation, including fingerprint submission, revealed the defendant is a citizen and national of Mexico who had previously been deported from the U.S. to Mexico. He reentered the U.S. without permission from the proper authorities on an unknown date and through an unknown location.

2. Mr. Magana-Mendoza's immigration records reveal he was first ordered removed and subsequently deported from the U.S. on the same date, September 18, 1999, through San Luis, Arizona. He has four other deportations: December 20, 2008, through San Ysidro, California; June 8, 2012, through Laredo, Texas; July 8, 2012, through San Ysidro, California; and October 13, 2014, through Hidalgo, Texas.

3. Available records indicate the defendant has been in the U.S. since on or before March 31, 2018.

4. According to the Washington State Department of Licensing website, the defendant has a Washington State identification card (MAGANF*288DU), which expires on March 31, 2024. Washington State driver's licenses and identification cards expire every 6 years. Therefore, it appears Mr. Magana-Mendoza obtained the license on or before March 31, 2018.

5. According to a LexisNexis Accurint report, the defendant is associated with utility connection on July 29, 2018.

**Offense Level Computation**

6. Absent ex post facto issues, the advisory guidelines in effect at the time of sentencing are applied pursuant to 18 U.S.C. § 3553(a)(4) and USSG §1B1.11. In this instance, the 2018 Guidelines Manual is being used for guideline application.

7. According to Rule 32(d)(1), the probation officer is responsible for identification of all applicable guidelines and policy statements of the United States Sentencing Commission; calculation of a defendant's total offense level and criminal history category; and identification of any other factors relevant to imposition of sentence. Our agency's Publication 107 stresses that our findings should be independent of those devised by the government or the defendant.

**Count 1**: **Alien in the United States After Deportation**

8. **Base Offense Level:** The guideline for a violation of 8 U.S.C. § 1326 is USSG §2L1.2. The base offense level is 8. **8**

9. **Specific Offense Characteristics:** None **0**

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

| | | |
|---|---|---|
| 10. | **Victim Related Adjustment:** None | **0** |
| 11. | **Adjustment for Role in the Offense:** None | **0** |
| 12. | **Adjustment for Obstruction of Justice:** None | **0** |
| 13. | **Adjusted Offense Level (Subtotal):** | **8** |
| 14. | **Chapter Four Enhancement:** None | **0** |
| 15. | **Adjustment for Acceptance of Responsibility:** The defendant meets the criteria for acceptance of responsibility, thereby justifying a 2-level decrease pursuant to USSG §3E1.1(a). | **-2** |
| 16. | **Total Offense Level:** | **6** |

### PART B. THE DEFENDANT'S CRIMINAL HISTORY

17. If the defendant has criminal history in the State of Washington, Washington State Court Rules require a defendant receive benefit of counsel or knowingly waive that right.

18. For the purposes of criminal history computation, the earliest date of relevant conduct is November 7, 2018.

19. Unless otherwise noted, this officer has not requested incident reports for driving offenses or offenses covered under USSG §4A1.2(c)(2).

**Juvenile Adjudication(s)**

20. None

**Adult Criminal Conviction(s)**

| | **Date of Arrest** | **Conviction/Court** | **Date Sentence Imposed/Disposition** | **Guideline** | **Pts.** |
|---|---|---|---|---|---|
| 21. | 05/24/2008 (age 36) | Open Container Beer/Wine Unknown Court, Chester, SC #R84 | 05/24/2008: $257 fine | 4A1.2(c)(2) | 0 |

22. Name used: Mendoza, Filiberto Magana

23. Attorney representation is unknown.

24. This matter was located in the defendant's rapsheet and immigration records.

4

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

25. | 07/02/2012 (age 40) | Illegal Entry U.S. District Court, TXSD, McAllen, TX #7:12PO04130-PEO-1 | 07/05/2012: credit for time served; $10 special assessment | 4A1.1(c) | 1

26. The court docket reflects the defendant is also known as Filiberto Magana-Mendoza.

27. The defendant was represented by counsel.

28. Mr. Magana-Mendoza's rapsheet and immigration records indicate he was originally charged with entry without inspection, time, or place and alien removal.

29. According to the criminal complaint, on July 2, 2012, the defendant was located near Rio Grande City in Starr County, within the Southern District of Texas. An investigation revealed Mr. Magana-Mendoza is a citizen and national of Mexico who had previously been deported from the U.S. to Mexico. The defendant told agents he entered the U.S. without permission on July 2, 2012, by rafting across the Rio Grande River near Rio Grande City in Texas.

30. The defendant was subsequently deported to Mexico on July 8, 2012, through San Ysidro, California.

**Criminal History Computation**

31. The criminal convictions above result in a subtotal Criminal History Score of 1. According to the Sentencing Table in USSG Chapter Five, Part A, a Criminal History Score of 1 establishes a Criminal History Category of I.

**Other Criminal Conduct**

32. None

**Pending Charges**

| **Date of Arrest** | **Charge/Agency** | **Disposition** |
|---|---|---|
| 33. 08/14/2008 (age 36) | Trafficking Marijuana York County Circuit Court, York, SC #J153013 | Pending |

34. Name used: Magana-Mendoza, Filberto; Magana-Mandoza, Fernando

35. According to the York County Sheriff's Office, on August 14, 2008, while conducting a joint narcotics investigation with Chester County, officers executed two search warrants at Dave's Mini Storage; 3266 Chester Highway in York South Carolina, units 111 and 248. Officers

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

    seized approximately 262.83 pounds of marijuana along with masking agents and marijuana seeds. Officers stopped two suspects who were in a white 2003 Cadillac Escalade and took them to Dave's Mini Storage where they were placed under arrest. Through this investigation, four suspects including the defendant were listed schemed, conspired, aided and abetted with each other to manufacture and traffic the marijuana that was seized. A warrant was issued for Mr. Magana-Mendoza's arrest on the same date.

36. According to the defendant's rapsheet and the York County Sheriff's office, the warrant issued on August 14, 2008, is still active as of the submission of this report. The warrant is extraditable in the State of South Carolina, North Carolina, and Georgia.

**Other Arrests**

| Date of Arrest | Charge/Agency | Disposition |
|---|---|---|
| 37. 09/18/1999 (age 27) | Removal Proceedings U.S. Immigration and Customs Enforcement, San Luis, AZ #SLU9909000093 | 09/18/1999: deported to Mexico through San Luis, Arizona |

38. Name used: Sanchez-Sandoval, Fausto; Maganamendosa, Fernando

39. Prosecution for an additional charge of documented false claim was declined.

40. Immigration records reflect on September 18, 1999, the defendant applied for admission to the U.S. He presented a forged naturalization certificate in the name of Fausto Sanchez-Sandoval and immigration number A091403248 in an attempt to enter the U.S. Mr. Magana-Mendoza admitted being a citizen and national of Mexico without permission to enter the U.S. He knew the document did not belong to him. He relayed his friends had given him the document and he did not have knowledge where his friends obtained it. He also said he paid $500 for the document on September 17, 1999, in Tijuana, Mexico. The defendant told agents he had planned on going to Los Angeles, California, for employment purposes. Mr. Magana-Mendoza claimed this was his first entry to the U.S. and immigration records revealed he had never been apprehended by immigration up to that point. During this encounter, the defendant reported his brother is a naturalized U.S. citizen but had not filed for immigration benefits.

41. Immigration records reflect the A number used on the forged document belongs to Anivar Napoleon.

| | | |
|---|---|---|
| 42. 12/07/2008 (age 36) | No Valid Operator's License North Bend Municipal Court, North Bend, WA #CQ13731NB | 12/08/2008: no charges filed |

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

43. According to the probable cause, on December 7, 2008, at 2:09 a.m., an officer from the King County Sheriff's Office observed a vehicle without any lights. The officer initiated a traffic stop and contacted Mr. Magana-Mendoza on Interstate 90, exit 31 in North Bend, Washington. The defendant provided the officer with a Mexican driver's license as proof of identification. The officer noted Mr. Magana-Mendoza's identity was in question. The defendant did not have valid identification, proof of insurance, and the car was not registered to him. Mr. Magana-Mendoza was taken into custody on the same date.

44. 12/09/2008    Entry Without Inspection, Time,    12/20/2008: deported to Mexico
    (age 36)       or Place                           through San Ysidro, California
                   U.S. Immigration and Customs
                   Enforcement, Seattle, WA
                   #SEA0912000097

45. Names used: Mendoza, Filiberto Magana; Maganamendoza, Fernando

46. Immigration records reflect on December 9, 2008, the defendant was located while in custody at the Issaquah City Jail in Issaquah, Washington, regarding case number CQ13731NB. An investigation revealed Mr. Magana-Mendoza is a citizen and national of Mexico who had previously been deported from the U.S. to Mexico. The defendant relayed he entered the U.S. without permission on or before sometime in May 2005, at or near San Ysidro, California.

47. 04/12/2012    Ct. 1: Alien Removal                06/08/2012: deported to Mexico
    (age 40)       Ct. 2: Reentry of Removed Aliens  through Laredo, Texas
                   U.S. Immigration and Customs
                   Enforcement, Kingsville, TX
                   #KIN1204000087 and
                   #HPC1205000625

48. Name used: Magana-Mendoza, Filberto; Magana-Mendoza, Filiberto

49. This matter is related to case number 2:12MJ00362-BJE-Witness 2.

50. Immigration records reflect, on April 12, 2012, the defendant was located in Kingsville, Texas. He was one of two undocumented aliens part of an alien smuggling case with defendant Roy Reyes. Roy Reyes was charged with bringing in and harboring aliens.

51. An investigation including fingerprint submission revealed Mr. Magana-Mendoza is a citizen and national of Mexico who had previously been deported from the U.S. to Mexico. The defendant reported he entered the U.S. without permission on April 8, 2012, by wading across the Rio Grande River near Hidalgo, Texas. He shared of hiding at a stash house in McAllen, Texas, until April 12, 2012, when he was transported in the trunk of a vehicle. He informed they were dropped off in a parking lot and instructed to wait there until their other ride arrived. He said they waited approximately 2 hours and then rode in another vehicle before being

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

> located. Mr. Magana-Mendoza advised he had planned on traveling to Yakima, Washington, to live and obtain employment for about 1 year.

52. The immigration records for this matter reflect the defendant had a warrant from the York County Sheriff's office in South Carolina, however, determined to not be extraditable at the time.

53. On May 18, 2012, Mr. Magana-Mendoza was released as a material witness at which time he went into immigration custody pending removal. He was subsequently deported to Mexico as listed above.

54. 04/12/2012     Federal Material Witness           05/17/2012: released from
    (age 40)       U.S. District Court, TXSD,         custody
                   Corpus Christi, TX
                   #2:12MJ00362-BJE-Witness 2

55. Name used: Magana-Mandoza, Fernando

56. This matter is related to case number KIN1204000087 and HPC1205000625.

57. 10/12/2014     Alien Removal                      10/13/2014: deported to Mexico
    (age 42)       U.S. Immigration and Customs       through Hidalgo, Texas
                   Enforcement,
                   Rio Grande Valley, TX
                   #MCS1510000302

58. Immigration records reflect on October 12, 2014, the defendant was encountered in Rio Grande Valley, Texas. An investigation revealed Mr. Magana-Mendoza is a citizen and national of Mexico who had previously been deported from the U.S. to Mexico. The defendant indicated he entered the U.S. without permission on October 12, 2014, at or near Hidalgo, Texas.

59. 08/25/2018     Ct. 1: Manufacture of a            11/05/2018:
    (age 46)       Controlled Substance Marijuana    Cts. 1-2: dismissed without
                   Ct. 2: Possession of a Controlled  prejudice due to insufficient
                   Substance Marijuana with Intent    evidence at the time
                   to Deliver
                   Yakima County Superior Court,
                   Yakima, WA
                   #18-1-01634-2

60. According to the Yakima County Sheriff's Office, on August 25, 2018, at approximately 11:25 a.m., dispatch received a text message indicating a possible hostage situation; however, the address was unknown at the time. The message relayed there were people trapped in a basement, held against their will, and guns were used. Officers had responded to 520 South Lester and 1091 North Bank within the last 2 days for similar welfare checks and nothing had

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

    been located. Therefore, on this date, officers requested an emergency locate of the phone's global positioning system location due to the nature of the situation. The phone carrier pinged the phone and provided the officers with latitude/longitude coordinates. An officer entered the coordinates to a mobile map which indicated the location of the phone was within 16 meters of 110 Snipes Canal Road in Yakima, Washington.

61. Officers arrived at 110 Snipes Canal Road and located three adults outside the residence. One of the adults, a female, was identified as one of the current renters of the property. Officers explained they had received information indicating a possible hostage situation which was occurring in the basement of the residence. The female renter stated she knew nothing of the situation and called her husband who was at work, off site. An officer spoke with the female's husband over the phone. The husband was on his way to the address. The officer received verbal permission to search the residence from both.

62. Officers searched the residence and located four individuals including the defendant and his 17-year-old son. The defendant and his son were in the kitchen while two others were in the basement. All four were detained and placed in custody.

63. The husband and wife renters of the residence were also detained and questioned. Both advised they needed some extra money and decided they would rent one of the extra rooms. They were contacted by a couple who had heard their ad on the radio. The couple never showed up, but on August 23 or 24, 2018, some men arrived. They assumed it might be the people who wanted to rent. The men asked if they could stay a few nights and the husband and wife agreed. The husband and wife became suspicious when there was no female and noticed a weird smell coming from the basement. They also noticed people coming and going. The husband did not know what to do and contacted a neighbor about this. The neighbor suggested he call the police. The husband renter admitted to making the calls about the hostages.

64. During the search, a large amount of suspected marijuana and marijuana processing, distribution, and packaging items were located in the basement. Officers requested and were granted a search warrant of the residence. Additional items of packaging and distribution were in the basement as well as multiple firearms. Other officers arrived and located an outdoor grow containing fifteen mature plants to the south of the residence. Officers requested and were granted an additional search warrant for the grow area and shed. Over 200 pounds of processed marijuana was in the basement; some of which had already been separated and packaged for distribution. While taking photographs officers discovered three other growing sites near the property.

65. Mr. Magana-Mendoza was booked into custody on the same date and had an active warrant at the time. The police report does not provide additional information regarding the warrant. This officer believes the warrant referenced was the same warrant active as of the submission of this report from York County Sherriff's office in South Carolina, which has been pending since 2008. The other adult males as well as the defendant's juvenile son were also taken into custody on the same date.

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

66. On August 29, 2018, an information was filed with the court alleging count 1: manufacture of a controlled substance marijuana.

67. On September 10, 2018, Mr. Magana-Mendoza appeared for his arraignment and a plea of not guilty was filed. Information was also amended on this date to count 1: manufacture of a controlled substance marijuana; and count 2: possession of a controlled substance marijuana with intent to deliver.

### PART C. OFFENDER CHARACTERISTICS

68. The information contained in this section was provided by defense counsel and has not been independently verified.

### Personal and Family Data

69. Fernando Magana-Mendoza was born on March 31, 1972, in Tecapatepe, Michoacán, Mexico, to Rita Mendoza Sanchez and Antonio Magana Mendoza. His parents were legally married, and he believes they were both legal permanent residents of the United States; however, both are now deceased. Mr. Magana-Mendoza first came to the United States with his brother when he was 15 or 16 years old to work. He stayed for approximately 1 year and then returned to Mexico. He later attempted to return and was deported.

70. Mr. Magana-Mendoza recalls that his childhood was very difficult. He grew up on a farm in a small village and his family was very poor so Mr. Magana-Mendoza had to leave school at a young age to work on the farm and help his family. Because of this, Mr. Magana-Mendoza never advanced past the third grade in school. He is, however, able to read in his native language of Spanish.

71. Mr. Magana-Mendoza is married to María Guadalupe Ochoa Mendoza. Until his arrest, the couple lived together in Warden, Washington, with their four children: Fernando (age 17); Alfredo (age 12); Alejandra (age 10); and Chantal (age 1 month). Ms. Ochoa Mendoza and their oldest son were granted asylum in the United States, and the other three children are United States citizens. Mr. Magana-Mendoza also has a daughter, Selene Pulido (age 19), from a previous relationship.

72. Mr. Magana-Mendoza has five brothers and six sisters; however, of his eleven siblings, five are deceased (one brother and one sister died in infancy, one brother was murdered several years ago, and one brother and one sister died of other causes). All of his remaining siblings live in Mexico except for his brother, Silverio Magana Mendoza, who lives in California, and is a United States citizen.

### Physical Condition

73. Mr. Magana-Mendoza suffers from migraines and nosebleeds. He is currently taking ibuprofen for the migraines but does not believe it is helping. He is also experiencing tooth pain and has

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

    requested medical assistance during this period of incarceration. He has reported no other issues related to his physical health.

### Mental and Emotional Health

74.   Mr. Magana-Mendoza has reported no issues related to his mental health.

### Substance Abuse

75.   Mr. Magana-Mendoza has reported no issues related to substance abuse.

### Educational, Vocational and Special Skills

76.   Mr. Magana-Mendoza attended school in his home state in Mexico, where he completed the third grade before leaving to work on his family's farm. He reports no formal skills or training.

### Employment Record

77.   Mr. Magana-Mendoza has experience doing agricultural field work and working on an animal farm in Warden, Washington.

### Financial Condition: Ability to Pay

78.   According to the provisions of USSG §5E1.2(d)(2), the Court shall consider when determining a fine, any evidence presented as to the defendant's ability to pay the fine in light of his earning capacity and financial resources.

79.   Mr. Magana-Mendoza has reported no major assets, bank accounts, or property. Given the fact that Mr. Magana-Mendoza has no significant assets and that he will likely be deported from the United States, it appears he cannot reasonably pay a fine.

### PART D. SENTENCING OPTIONS

### Custody

80.   **Statutory Provisions:** The maximum term of imprisonment is 2 years. 8 U.S.C. § 1326(a)(1)(2).

81.   **Guideline Provisions:** Based upon a total offense level of 6, and a Criminal History Category of I, the guideline imprisonment range is 0 to 6 months. Since the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required unless the applicable guideline in Chapter Two expressly requires such a term. USSG §5C1.1(b).

### Supervised Release

82.   **Statutory Provisions:** The Court may impose a term of supervised release of not more than 1 year. 18 U.S.C. § 3583(b)(3).

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

83. **Guideline Provisions:** Since the offense is a Class E Felony, the guideline range for a term of supervised release is 1 year. USSG §5D1.2(a)(3).

   **Probation**

84. **Statutory Provisions:** The defendant is eligible for not less than 1 year or more than 5 years probation because the offense is a Class E Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

85. **Guideline Provisions:** If probation is imposed, the term shall be at least 1 year but not more than 5 years if the offense level is 6 or greater. USSG §5B1.2(a)(1).

86. Since the applicable guideline range is in Zone A of the Sentencing Table, a condition requiring a period of community confinement, home detention, or intermittent confinement may be imposed, but is not required. USSG §5B1.1, comment. n.1(a).

   **Fines**

87. **Statutory Provisions:** The maximum fine is $250,000. 18 U.S.C. § 3571(b).

88. **Guideline Provisions:** The fine range for this offense is $1,000 to $9,500. USSG §5E1.2(c)(3).

89. Costs of prosecution shall be imposed on the defendant as required by statute. USSG §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG §5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated August 1, 2018, provides the following monthly cost data:

|  | Bureau of Prisons Facilities | Residential Reentry Centers | Supervision by Probation Officer |
|---|---|---|---|
| Daily | $99 | $89 | $12 |
| Monthly | $3,025 | $2,692 | $364 |
| Annually | $36,300 | $32,309 | $4,369 |

   **Special Assessments**

90. **Statutory Provisions:** The special penalty assessment is $100 per count of conviction. 18 U.S.C. § 3013(a).

91. **Guideline Provisions:** The special penalty assessment is $100 per count of conviction. USSG §5E1.3.

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

92. The probation officer has identified the following as potential grounds for departure:

- Upon motion of the government, and pursuant to USSG §5K3.1, the Court may depart downward under the Fast Track Program approved by the U.S. Attorney General and the U.S. Attorney for the Eastern District of Washington.

- If the defendant is eligible for a 2-level reduction, the total offense level would be 4. When combined with a Criminal History Category of I, the resulting guideline range for imprisonment is 0 to 6 months, with a fine range of $500 to $9,500.

- If the defendant is eligible for a 4-level reduction, the total offense level would be 2. When combined with a Criminal History Category of I, the resulting guideline range for imprisonment is 0 to 6 months, with a fine range of $200 to $9,500.

Respectfully Submitted,

Matthew L. Thompson
Chief U.S. Probation Officer

By:  s/Erica Helms                    12/03/2018
     Erica Helms                              Date
     U.S. Probation Officer

Approved By:

s/Shane Moore                    12/03/2018
Shane Moore                              Date
Supervisory U.S. Probation Officer

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

## United States Probation & Pretrial Services Office
### Eastern District of Washington

### Mandatory and Standard Conditions of Probation

### Mandatory Conditions

1. You must not commit another federal, state or local crime.

2. You must not unlawfully possess a controlled substance, including marijuana, which remains illegal under federal law.

3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐ The above drug testing is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(Check, if applicable.)*

4. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable, see 42 U.S.C. § 14135a(d)(all felonies, crimes under Ch. 109A, crimes of violence, and attempts or conspiracy to commit these crimes.)*

5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*Check, if applicable.*)

6. ☐ You must participate in an approved program for domestic violence. *(Check, if applicable; see 18 U.S.C. § 3583(d) for defendants convicted of a domestic violence crime defined in § 3561(b).)*

7. ☐ You must make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664. *(Check, if applicable)*

8. You must pay the assessment imposed in accordance with 18 U.S.C. § 3013.

9. If this judgment imposes a fine, you must pay in accordance with the Schedule of Payments sheet of this judgment.

10. You must notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

## **Standard Conditions**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when to report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4. You must be truthful when responding to the questions asked by the probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

10. ☒ You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers). (*Check, if applicable.*)

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. You must follow the instructions of the probation officer related to the conditions of supervision.

## Mandatory and Standard Conditions
## of Supervised Release

### Mandatory Conditions

1. You must not commit another federal, state or local crime.

2. You must not unlawfully possess a controlled substance, including marijuana, which remains illegal under federal law.

3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

   ☐ The above drug testing is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(Check, if applicable.)*

4. ☒ You must cooperate in the collection of DNA as directed by the probation officer. (*Check, if applicable, see 42 U.S.C. § 14135a(d)(all felonies, crimes under Ch. 109A, crimes of violence, and attempts or conspiracy to commit these crimes.)*

5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*Check, if applicable.*)

6. ☐ You must participate in an approved program for domestic violence. *(Check, if applicable; see 18 U.S.C. § 3583(d) for defendants convicted of a domestic violence crime defined in § 3561(b).)*

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

## Standard Conditions

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when to report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4. You must be truthful when responding to the questions asked by the probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

Magana-Mendoza, Fernando
1:18CR02056-SMJ-1

10. ☒ You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers). (*Check, if applicable.*)

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If this judgment imposes restitution, a fine or special assessment, it is a condition of supervised release that you pay in accordance with the Schedule of Payments sheet of this judgment. You shall notify the probation officer of any material change in your economic circumstances that might affect your ability to pay any unpaid amount of restitution, fine, or special assessments.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

## **Suggested Special Condition**

1. You are prohibited from returning to the United States without advance legal permission from the United States Attorney General or his designee. Should you reenter the United States, you are required to report to the probation office within 72 hours of reentry.